# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# HELENA DIVISION

SHARON Y. SANDERS                                                                                    PLAINTIFF

v.                                        Case No. 2:08CV00219 JLH

LEE COUNTY SCHOOL DISTRICT NO. 1;
THE BOARD OF EDUCATION OF LEE
COUNTY, ARKANSAS; ELIZABETH
JOHNSON, individually and as President and
Member of the Board of Education of Lee
County, Arkansas; MILTON HALL, individually;
LEE HALL, as Member of the Board of Education
of Lee County, Arkansas; VICTORY PERRY,
individually and as Member of the Board of
Education of Lee County, Arkansas; and
PEARLTHE COLLINS, individually and as
Member of the Board of Education of
Lee County, Arkansas                                                                                 DEFENDANTS

## OPINION AND ORDER

Sharon Sanders commenced this action against Lee County School District No. 1; the Lee County Board of Education; Milton Hall, individually; and Elizabeth Johnson, Lee Hall, Victory Perry, and Pearlthe Collins in their respective individual and official capacities. Sanders claims that she was discriminated against because of her race, in violation of 42 U.S.C. § 1983 and Title VII. The defendants have filed a motion for summary judgment. Sanders has responded, and the defendants have replied. For the following reasons, the motion for summary judgment is granted in part and denied in part.

### I.

A court should enter summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. If the moving party meets this burden, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting FED. R. CIV. P. 56(e)). A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. In deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party and draws all inferences in his favor, mindful that summary judgment seldom should be granted in discrimination cases where claims are often based on inferences. *Peterson v. Scott County*, 406 F.3d 515, 520 (8th Cir. 2005); *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000) (collecting cases). *But see Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J., dissenting).

## II.

In August 2000 Sanders, a Caucasian, was hired as the Finance Coordinator for the Lee County School District No. 1 in Arkansas. She reported directly to the Superintendent and was a member of the management team. Her duties included supervising the School District's finances and finance personnel. As a classified position, Sanders's contract had to be renewed annually.

On January 4, 2007, Sanders submitted a letter of resignation to School District Superintendent Wayne Thompson, a Caucasian, to be effective March 1, 2007. Her letter stated that she was resigning due to health issues.

On or around February 20, 2007, Sanders withdrew her letter of resignation. At a Board of Education meeting that same day,[1] Thompson recommended that the Finance Coordinator and Food Service Coordinator—then Doris Lewellen, an African American—no longer be required to present their respective reports to the Board in person. Previously, those positions had been required to make reports at the Board's monthly meetings. Sanders says that the African American Board members, especially Elizabeth Johnson, regularly subjected her to openly hostile attitudes and treatment at the Board's meetings. Thompson informed the members that he and Sanders would be available to answer questions about the financial report. He said that the purpose of the change was to make Board meetings more efficient. The Board adopted Thompson's recommendation by a majority vote, with all three African American members opposed.[2]

Milton Hall, an African American, was elected to the Board in September 2007, changing the racial composition to majority African American. At the Board's October 23, 2007 meeting, Johnson recommended changing the format of the financial report so that the Board could have something they could understand. After formally moving for the change, Thompson asked the Board to give him and Sanders time to study the format, and Collins thought it prudent to allow Thompson

---

[1]The defendants allege that Sanders initially tendered her letter of resignation because she no longer wished to make personal presentations at Board meetings, and that she withdrew her resignation only after Thompson agreed to do away with that requirement.

[2]At that time, the racial composition of the Board was four Caucasians and three African Americans.

and Sanders time to review Johnson's sample format. Johnson then withdrew her motion. A motion to allow Thompson and Sanders to review the proposal and to reconsider the issue later passed, with only Johnson opposed. Thompson and Sanders addressed the formatting concerns at the Board's special financial retreat on November 15, 2007.

At the close of the Board's November 20, 2007 regular meeting, Hall made a series of motions, each seconded by Johnson. Hall recommended reassigning Superintendent Thompson to Assistant Superintendent of Maintenance and Transportation, effective immediately. Hall said Thompson would maintain his current pay, and that it was nothing personal. The motion passed, with only the four African American members voting in favor. Johnson then told Thompson that he would receive a job description within the next fifteen days.

Next, Hall recommended that Sharon Sanders be reassigned to "Food Service Assistant," a position that previously had not existed, effective immediately. Hall said Sanders would maintain her current pay. Again, the motion passed with only the four African American members voting in favor. The minutes reflect no discussion of the School District's policy manual, Sanders's previous job performance, or any substantive reason whatsoever for the reassignment.

Finally, Hall moved to appoint Clyde Noel as Interim Superintendent. And again the motion passed with only the four African American members voting in favor. Noel had been a physical education instructor before being appointed Interim Superintendent. Johnson announced a special meeting to take place on November 26, and the Board meeting was adjourned immediately thereafter.

The next day, on November 21, 2007, Johnson sent Sanders a letter informing her of the Board's decision:

> On last night [sic] the Lee County Board of Education voted to reassign you to the position of Assistant Food Service Coordinator at the same salary. This letter is to inform you that the action of the Lee County School Board should take effect immediately. The board is requesting you to remove all personal items from your office and return your keys to Mrs. Elizabeth Johnson by 5:00 p.m., Monday, November 26, 2007.

The day after receiving Johnson's letter, Sanders sought and received sick leave under the Family and Medical Leave Act. Nearly one year later, on September 2, 2008, Sanders submitted a letter of resignation, stating only: "Please accept this letter as notice that I resign my position with the Lee County School District effective immediately." Sanders was apparently on FMLA sick leave from the time she learned of her reassignment until she resigned.

Sanders filed an EEOC charge on December 14, 2007, a little more than one month after being reassigned. After an investigation, she received a letter dated March 8, 2008, from the EEOC investigator stating that the evidence did not substantiate her allegations; she received a notice of suit rights on August 4, 2008. In her complaint, filed on October 31, 2008, Sanders makes claims for race discrimination and a hostile work environment. She alleges that the Board subjected her to an adverse employment action (reassignment from Finance Coordinator to Assistant Food Service Coordinator) because of her race (Caucasian). Sanders also alleges that, between the November 20, 2007 meeting and her September 2, 2008 resignation, she was subjected to adverse actions, intimidation, and harassment. She says that on one occasion she was removed from the payroll for

no reason; that the Board tried to eliminate her position[3]; and that Noel sent her harassing letters.[4]

### III.

The defendants move for summary judgment on Sanders's race discrimination and hostile work environment claims. They also argue that the individual defendants are shielded by qualified immunity.

**A.   RACE DISCRIMINATION**

In their motion for summary judgment, the defendants assert that Sanders's race discrimination claim fails because she cannot make out a prima facie case. The Court employs the *McDonnell Douglas* burden shifting framework under both § 1983 and Title VII claims. Under that analysis, a plaintiff must first make out a prima facie case of race discrimination by showing that:

---

[3]In an April 2008 Board meeting, Noel recommended that the position of Assistant Food Service Coordinator be eliminated. The minutes do not reflect a reason for the recommendation. The minutes only state that Collins seconded the motion after a brief discussion. Hall, Perry, and Johnson voted in favor, but the motion failed when Collins withdrew her second after another brief discussion.

[4]In June 2008, Noel, in his capacity as Interim Superintendent, sent two letters to Sanders asking for updates on her physical condition. The first letter, dated June 3, read:

> Due to your extensive use of sick leave, it has become necessary to request additional information pertaining to your illness and your ability to return to employment with the Lee County School District.
>
> The District will comply with the provisions of the rules and regulations as afforded by the Family and Medical Leave Act of 1993. I am invoking the provision requiring you to provide additional medical certification supporting your continuous leave from the district. Please make available two additional opinions to support your cause, at district's expense, and a fitness for duty report stating your limitations upon returning to work.

Having received no response, on June 17 Noel sent Sanders a second letter, which is exactly the same as the first, but with this postscript: "Please respond to this original request within five (5) days."

(1) she was a member of a protected group; (2) she was meeting her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently. *Shanklin v. Fitzgerald*, 397 F.3d 596, 602 (8th Cir. 2005). Instead of showing that other similarly situated employees were treated differently, a plaintiff may also satisfy the fourth element by showing that there are facts permitting an inference of discrimination. *Cherry v. Ritenour Sch. Dist.*, 361 F.3d 474, 478 (8th Cir. 2004). If the plaintiff establishes a prima facie case, then the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. *Id.* If the employer articulates such a reason, the burden shifts back to the plaintiff to show that the articulated reason is mere pretext for discrimination. *Id.*

The defendants concede that Sanders is a member of a protected class. They contest, however, whether Sanders has established the other three elements of her prima facie case. First, the defendants argue that Sanders was not meeting the School District's legitimate job expectations because she failed on multiple occasions to provide the School Board with information it rightfully requested. The defendants do not explain exactly what information Sanders failed to provide to the School Board. Based on the defendants' statement of facts, it appears that they are referring to two issues: that in February 2007 the Board (then majority Caucasian) changed the reporting procedures so that neither Sanders nor Lewellen would have to make their reports to the Board in person, and that in October 2007 the Board (then majority African American) voted to allow Thompson and Sanders to study Johnson's proposed changes to the formatting of the financial report. On the first issue, there are no facts showing that either Thompson or Sanders withheld financial information from the Board after February 2007. The Board approved the change in reporting procedures for

7

both Sanders and Lewellen; Sanders did not unilaterally decide to stop appearing. On the second, Johnson admitted in deposition testimony that at the Board's financial retreat a few weeks later, Sanders discussed the proposed formatting changes with the Board. The Court has reviewed Sanders's annual performance evaluations from 2002-2007. Under every area of review, Sanders was rated as "satisfactory," "excellent," or "outstanding." Her most recent performance evaluation described her accomplishments as: "Excellent: Perfect audits for the last 6 years (no findings)." There is at least a fact issue as to whether Sanders was meeting the School District's legitimate job expectations as Finance Coordinator.

Second, the defendants contend that Sanders did not suffer an adverse employment action, arguing that a purely lateral transfer or reassignment cannot be materially adverse. The defendants say that Sanders "suffered no diminution in title, position, salary, job responsibilities, benefits, hours, or other material terms or conditions." The defendants' brief repeatedly states that Sanders was reassigned to "Assistant Finance Coordinator," but that is not the evidence. The minutes of the Board meeting in which she was reassigned, Johnson's letter to Sanders, the job description sent in response to a discovery request, and Sanders's unexecuted employment contract for 2008-2009, show that the Board reassigned Sanders to the position of "Food Service Assistant" or "Assistant Food Services Coordinator." A purely lateral transfer with no reduction in pay or benefits cannot constitute an adverse employment action, *Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997), but a reassignment resulting in demotion in title and significantly diminished responsibilities can be considered adverse. *See Turner v. Gonzales*, 421 F.3d 688, 697 (8th Cir. 2005) (finding there was a genuine issue of material fact where the work to which plaintiff was reassigned was "a considerable downward shift from her responsibilities" in her previous position); *Meyers v. Neb.*

*Health and Human Services*, 324 F.3d 655, 660 (8th Cir. 2003) (holding that there was a genuine issue of material fact where there was "a considerable downward shift in skill level required to perform [the plaintiff's] new job responsibilities"). Although Sanders's salary and benefits may have remained the same, she went from being the Finance Coordinator to being the Food Service Assistant, a position which previously did not exist. A reasonable jury could find that her duties as the Food Service Assistant were a considerable downward departure from her Finance Coordinator responsibilities, which included managing personnel and the finances of the entire School District.

Finally, the defendants argue that Sanders has not identified a similarly situated African American who was treated more favorably. A plaintiff can satisfy the fourth element of her prima facie case by showing that she was treated differently than other employees who were "similarly situated in all relevant respects." *Cronquist v. City of Minneapolis*, 237 F.3d 920, 928 (8th Cir. 2001). However, the elements of a prima facie case vary with the circumstances of the alleged discrimination. *Williams v. Ford Motor Co.*, 14 F.3d 1305, 1308 (8th Cir. 1994). A plaintiff can also satisfy the fourth element by showing that there are facts permitting an inference of discrimination. *Cherry*, 361 F.3d at 478.

Sanders concedes that there were no other employees in the School District who were similarly situated in all relevant respects, since no other employees held "Coordinator" positions with the same level of responsibility as Sanders. She argues, however, that the Court should follow *Cherry* and evaluate whether there are facts permitting an inference of discrimination.[5]

---

[5]In their reply brief, the defendants state that Sanders is "ask[ing] the Court to infer similarity," and they go on to argue that Sanders made no attempt to demonstrate similarity between her and Lewellen. That is an inaccurate characterization of Sanders's argument. She is not asking that the Court infer similarity between her and Lewellen. Rather, she abandons altogether the notion that there are similarly situated employees, and instead argues that other

9

The facts surrounding Sanders's reassignment are these: In September 2007 the racial composition of the School Board changed to majority African American. Hall, the newly elected African American Board member who had little exposure to the seven-year body of Sanders's work, made a series of motions at the end of the November 2007 meeting. Each of Hall's motions was seconded by Johnson, whose issues with Sanders's work performance are in dispute. As a result of those motions, Superintendent Thompson, a Caucasian, was replaced by Interim Superintendent Noel, an African American who previously had been a physical education instructor. Sanders was reassigned from Finance Coordinator—a position she had held for seven years with satisfactory or excellent reviews and results—to Food Service Assistant, a position that did not previously exist. Each of Hall's motions were passed along racial lines, with the four African Americans voting in favor, and the three Caucasians opposed. There is no evidence that Sanders's reassignment was based on an examination of or faults in her job performance. Indeed, there does not appear to be any evidence of a legitimate, nondiscriminatory reason for Sanders's reassignment.[6] Although the Board promised to send her a job description, she never received one, nor did she receive a written contract for the position as in years past. Not until Sanders made discovery requests in this lawsuit did the defendants produce a job description and an unexecuted contract. According to the language of the

---

evidence is sufficient to support an inference of discrimination, which also may satisfy the fourth element of her prima facie case.

[6]The defendants assert that part of the reason for her reassignment was that she failed to provide the Board with reports and information as requested. However, there is simply no evidence that Sanders deprived the Board of requested information and reports. All the evidence shows is that on one occasion Thompson requested that the Board give him and Sanders time to review Johnson's proposed changes to the formatting of the financial reports. The Board, then majority African American, approved giving them time to review Johnson's proposal—and Sanders reported on the formatting proposal and other financial issues at the Board's special financial retreat a few weeks later.

contract, the Board voted on it at their April 15, 2008 meeting, but the minutes of that meeting reflect no such vote. Rather, that was the meeting in which a motion to eliminate Sanders's position failed only after one member withdrew her seconding of the motion.

Where there is proof that the defendant's explanation is unworthy of credence, the fact finder can infer that the employer is attempting to cover up its real, discriminatory motive. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147-48, 120 S. Ct. 2097, 2108-09, 147 L. Ed. 2d 105 (2000). Suspicious timing of or ambiguous statements about the adverse employment action may also support an inference of discriminatory motive. *See Farr v. St. Francis Hosp. and Health Centers*, 570 F.3d 829, 832-33 (7th Cir. 2009). There are fact issues as to the reason for the Board's reassignment of Sanders. The Court concludes that a reasonable jury could infer from facts surrounding her reassignment that the defendants unlawfully discriminated against Sanders.

Because Sanders has presented sufficient evidence to establish a prima facie case of race discrimination, the burden shifts to the defendants to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Cherry*, 361 F.3d at 478. As a reason for Sanders's reassignment, the defendants state only that she failed to provide the Board with information on the School District's finances. However, that statement is unsupported by the evidence, and even by the deposition testimony of Johnson and Collins. Without some evidence—whether it be concerns expressed in minutes of a Board meeting, an audit, a missed deadline, an explicit refusal to provide the Board with information, or something similar—the defendants cannot meet their burden of demonstrating a legitimate, nondiscriminatory reason for Sanders's reassignment. Not only is there no evidence to support the stated reason, but, as the Court has already discussed, there is evidence that contradicts the defendants' stated reason. Therefore, even if the defendants carried their burden,

whether the defendants' stated reason is pretext for discrimination remains an issue of fact.

**B.  HOSTILE WORK ENVIRONMENT**

The defendants also move for summary judgment on Sanders's hostile work environment claim under § 1983 and Title VII. To establish a prima facie case for a hostile work environment, a plaintiff must prove: (1) that she was a member of a protected group; (2) the occurrence of unwelcome harassment; (3) a causal nexus between the harassment and her membership in the protected group; (4) that the harassment affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action. *Vajdl v. Mesabi Academy of KidsPeace, Inc.*, 484 F.3d 546, 550 (8th Cir. 2007).

Sanders, a Caucasian, was a member of a protected group for purposes of Title VII. The other elements of her hostile work environment claim are in dispute. The defendants argue that Sanders's only evidence on her claim is the Board's request for financial information that Sanders refused to produce. Sanders responds that the totality of the circumstances satisfy the remaining four elements, and that there were multiple instances of harassment beyond just the Board's request for financial information.

Sanders bases her hostile work environment claim on the following factual allegations. Until February 2007, she had to make in person financial reports at Board meetings. Prior to that, she was subjected to hostile attitudes from the African American Board members. In November 2007, shortly after they gained a majority vote, the African American Board members reassigned her from Finance Coordinator to Food Service Assistant, without notice or explanation. She was never sent a job description or contract. Shortly thereafter, she went on FMLA approved sick leave. In April

2008, a motion to eliminate her position received support from three of the four African American Board members and failed only after the fourth withdrew her seconding of the motion. In June 2008, Noel sent her two letters demanding that she provide additional evidence of her physical condition, including two additional medical opinions and a fitness for duty report.[7] On at least one occasion, she was removed from the payroll without explanation.

To affect a term, condition, or privilege of employment, the harassment must be "sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment." *Moylan v. Maries County*, 792 F.2d 746, 749 (8th Cir. 1986) (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)). Conduct must be extreme to amount to a change in terms and conditions of employment. *Faragher*, 524 U.S. at 788, 118 S. Ct. at 2284. In determining whether conduct was sufficiently severe or pervasive, a district court must consider all the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88, 118 S. Ct. 2275, 2283, 141 L. Ed. 2d 662 (1998).

In *Bradley v. Widnall*, 232 F.3d 626 (8th Cir. 2000), the plaintiff claimed she was discriminated against because of her race, African American, resulting in a hostile work environment. The plaintiff alleged that her supervisory duties were curtailed, and that she was left out of the decision-making process, treated with disrespect, and subjected to false complaints. Although the defendants' conduct may have created a "frustrating work situation," the Eighth Circuit

---

[7] Up to that time, Sanders had been providing on a routine basis a doctor's note in which her physician recommended that she needed additional leave time from work.

held that it was not "so severe or pervasive as to have affected a term, condition, or privilege of her employment." *Bradley*, 232 F.3d at 631-32. In *Singletary v. Mo. Dep't of Corrections*, 423 F.3d 886 (8th Cir. 2005), an African American plaintiff had information that some workers and managers had used a racial slur when referring to him. The Eighth Circuit held that although racial epithets are morally repulsive, a plaintiff must show more than a few occurrences over a course of years. *Singletary*, 423 F.3d at 893 ("To be actionable, such conduct must be shown to occur with such frequency that the very conditions of employment are altered and be viewed by a reasonable person as hostile."); *see also Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 759 (8th Cir. 2004) (finding that racial slurs directed toward the Asian plaintiff once a month for two years was insufficient to render the workplace objectively hostile).

Even presuming that the instances of harassment were based on Sanders's race, the conduct complained of in this case is not as severe as the conduct alleged in *Bradley*, *Singletary*, and *Bainbridge*, in which the conduct did not create an objectively hostile work environment. The circumstances surrounding Sander's reassignment in November 2007 are sufficient to create an issue of fact as to whether she was demoted because of her race. However, the alleged instances of racial harassment from 2007-2008, even including her reassignment in November 2007, are not sufficiently frequent or severe to constitute an objectively hostile working environment.

Sanders says only that she was subjected to hostile attitudes by the African American Board members prior to February 2007, but there are no allegations that the African American Board members made any racially derogatory remarks towards her. More than one year later, three African American Board members attempted to eliminate her position, but that motion failed. That she was removed from the payroll on one occasion does not evidence a pattern of attempted intimidation or

discrimination. Finally, the letters from Noel in June 2008 regarding her FMLA leave make no racial remarks and were sent only after Sanders had been on FMLA leave for about six months. The several instances of alleged harassment occurred over the span of at least sixteen months, meaning that they did not occur with any great frequency. The conduct also lacked severity and was not physically threatening. There is also nothing to indicate that the harassment interfered with Sanders's work performance, either before or after she went on FMLA leave. *Faragher*, 524 U.S. at 787-88, 118 S. Ct. at 2283 (totality of the circumstances includes the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance"). All of these occurrences may have created a frustrating work situation for Sanders, *Bradley*, 232 F.3d at 631-32, but they are not sufficiently severe or pervasive so as to create a hostile work environment.

**C.    QUALIFIED IMMUNITY**

Finally, the individual defendants assert that they are shielded by qualified immunity. Qualified immunity protects government officials from individual liability under § 1983 if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Nance v. Sammis*, 586 F.3d 604, 609 (8th Cir. 2009) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)). The individual defendants argue that they were not on notice that requiring Sanders to respond to requests for financial information violated any law. They say that Thompson prevented the Board from direct access to the information by changing the requirement that Sanders give her reports in person.

There are several problems with the individual defendants' argument. First, both Sanders

and Lewellen, an African American, were dispensed from the requirement of having to provide in-person reports.  Second, Thompson did not make the decision himself—a majority of the Board, albeit at that time a Caucasian majority, approved the change.  Third, as the Court has already discussed, there is no evidence that the Board members were actually deprived of any of the financial information that they sought.  Johnson and Collins admitted as much in deposition testimony, and none of the minutes of Board meetings indicate that Sanders failed to provide the Board with requested information.

Sanders's race discrimination and hostile work environment claims are not premised solely, or really even partly, on the Board's requests for financial information.  The Court has discussed at length the factual allegations and evidence that support Sanders's claims.  She has established a prima facie case for both race discrimination and hostile work environment.  There is a clearly established statutory and constitutional right to be free from acts of race discrimination and a hostile work environment.  A reasonable person would have known of that clearly established right.  The individual defendants, as elected members of the School Board, certainly knew of that right.  Therefore, the individual defendants are not entitled to qualified immunity.  *See Herts v. Smith*, 345 F.3d 581, 588 (8th Cir. 2003) (where plaintiffs establish a prima facie case of discrimination, "there is no question that intentionally discriminatory actions on the part of governmental officials would not be entitled to qualified immunity").

**CONCLUSION**

For the foregoing reasons, the defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.  The motion for summary judgment on Sanders's claim for hostile work environment is GRANTED; the motion for summary judgment on Sanders's race

discrimination claim is DENIED. Document #23. Sanders has also filed a motion to strike certain arguments in the defendants' reply brief. Those arguments were not necessary for the resolution of the motion for summary judgment, and the Court has neither relied on nor addressed them in this opinion. Therefore, the motion to strike is DENIED as moot. Document #43.

    IT IS SO ORDERED this 22nd day of January, 2010.

    _____
    J. LEON HOLMES
    UNITED STATES DISTRICT JUDGE