IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
HELENA DIVISION

SHARON Y. SANDERS                                                                                      PLAINTIFF

v.                                          Case No. 2:08CV00219 JLH

LEE COUNTY SCHOOL DISTRICT NO. 1;
ELIZABETH JOHNSON, individually and as
President and Member of the Board of Education
of Lee County, Arkansas; MILTON HALL,
individually and as Member of the Board of
Education of Lee County, Arkansas;
VICTORY PERRY, individually and as
Member of the Board of Education of Lee
County, Arkansas; and PEARLETHE COLLINS,
individually and as Member of the Board of
Education of Lee County, Arkansas                                                               DEFENDANTS

**OPINION AND ORDER**

This is an employment discrimination case brought pursuant to 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964. A jury, answering six special interrogatories, found that Sharon Sanders was subjected to an adverse employment action by the defendants; that the defendants' action was motivated by race; that the defendants constructively discharged Sanders; that the defendants failed to prove that they would have taken the same action regardless of Sanders's race; that Sanders lost $60,825 in wages and fringe benefits; that Sanders suffered $10,000 in damages as a result of emotional distress and anguish; and that punitive damages should be awarded against Milton Hall in the amount of $2,500, Elizabeth Johnson in the amount of $5,000, and Victory Perry in the amount of $500. The defendants have filed a motion for judgment as a matter of law or, in the alternative, for a new trial, arguing that the evidence is insufficient to support each of the jury's findings.

**I.**

The Eighth Circuit has said that judges "must be extremely guarded in granting judgments as a matter of law after a jury verdict." *E.E.O.C. v. Kohler Co.*, 335 F.3d 766, 772 (8th Cir. 2003). In ruling on such a motion:

> [T]he district court must (1) consider the evidence in the light most favorable to the prevailing party, (2) assume that all conflicts in the evidence were resolved in favor of the prevailing party, (3) assume as proved all facts that the prevailing party's evidence tended to prove, and (4) give the prevailing party the benefit of all reasonable inferences that may reasonably be drawn from the facts proved. That done, the court must then deny the motion if reasonable persons could differ as to the conclusions to be drawn from the evidence.

*Id.* (quoting *Haynes v. Bee-Line Trucking Co.*, 80 F.3d 1235, 1238 (8th Cir. 1996) (citations omitted)).

The district court has more discretion in deciding whether to grant a new trial. *Pulla v. Amoco Oil Co.*, 72 F.3d 648, 656 (8th Cir. 1995). In ruling on a motion for new trial on the ground that the verdict is against the weight of the evidence, the district court has the authority to weigh the evidence. 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2806 (2nd ed. 1995). The key question is whether a new trial should be granted to avoid a miscarriage of justice. *Keenan v. Computer Assocs. Int'l, Inc.*, 13 F.3d 1266, 1269 (8th Cir. 1994).

Applying these standards, the Court concludes that the evidence was sufficient to support the jury's findings that the reassignment of Sanders was an adverse employment action, that the decision to reassign her was motivated by race, that the defendants failed to prove they would have reassigned her regardless of race, and that Sanders suffered damages for emotional distress and anguish in the amount of $10,000. The evidence was insufficient to support the jury's finding that Sanders was

constructively discharged. The evidence was also insufficient to support the punitive damages awards. The Court will therefore grant judgment as a matter of law on the claim of constructive discharge and on the claims for punitive damages. The result will be that the only damages recoverable are the damages for emotional distress and anguish. The motion for a new trial will be denied.

## II.

**A.   ADVERSE EMPLOYMENT ACTION**

Sanders was the finance coordinator for the Lee County School District. She reported directly to the superintendent and was a member of the management team. Her duties included supervising the school district's finances and the personnel who worked in the finance department.

On November 20, 2007, the four individual defendants voted to reassign her to the position of "food service assistant." A letter written the next day by Elizabeth Johnson, president of the school board, states:

> On last night the Lee County Board of Education voted to reassign you to the position of Assistant Food Service Coordinator at the same salary. This letter is to inform you that the action of the Lee County School Board should take effect immediately. The board is requesting you to remove all personal items from your office and return your keys to Mrs. Elizabeth Johnson by 5:00 p.m., Monday, November 26, 2007.

Before the meeting of November 20, 2007, the Lee County School District did not have a position entitled "food service assistant" or "assistant food service coordinator."

The defendants argue that the decision to reassign Sanders was not an adverse employment action because she was simply reassigned to a different job title with no diminution in compensation or benefits. They cite *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379 (8th Cir. 1994), where the plaintiff was reassigned but suffered no diminution in her title, salary, or benefits. *Id*. at 382.

3

A purely lateral transfer with no reduction in pay or benefits cannot constitute an adverse employment action, *Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997), but a reassignment resulting in significantly diminished responsibilities can be considered adverse even when the title, salary, and benefits remain unchanged. *See Turner v. Gonzales*, 421 F.3d 688, 697 (8th Cir. 2005) (finding a genuine issue of material fact where the work to which the plaintiff was reassigned was a "considerable downward shift from her responsibilities" in her previous position); *Meyers v. Neb. Health and Human Servs.*, 324 F.3d 655, 660 (8th Cir. 2003) (a genuine issue material fact existed where there was a "considerable downward shift in skill level required to perform [the plaintiff's] new job responsibilities," coupled with evidence of a reduced workload).

Here, the jury could reasonably conclude that the reassignment was not merely a lateral transfer to a different position but was a demotion even though Sanders's pay and benefits remained the same. First, her title was changed from finance coordinator for the Lee County School District to food service assistant or assistant food service coordinator, which reasonably can be construed as signifying a demotion. Secondly, the jury could reasonably conclude that the reassignment involved a considerable downward shift in responsibilities. Sanders had previously been a member of the management team who was in charge of finances for the entire school district and who supervised personnel in the finance department; now she was to be an assistant in the food services department. Sanders previously reported directly to the superintendent of schools; now she would report to the food services coordinator. Thirdly, that the president of the school board ordered Sanders to remove all of her personal items from her office and return her keys also suggests that Sanders was being demoted.

For these reasons, the jury reasonably could conclude that the reassignment of Sanders from finance coordinator for the district as a whole to assistant in the food services department was an adverse employment action.

**B.      RACE DISCRIMINATION**

After a trial in which the jury has found that the employer engaged in race discrimination, the court focuses not on the *McDonnell Douglas*[1] presumptions but on the issue of whether the plaintiff produced sufficient evidence to allow a reasonable jury to find race discrimination. *Kohler*, 335 F.3d at 773; *Morgan v. Arkansas Gazette*, 897 F.2d 945, 948 (8th Cir. 1990).

The evidence at trial established that during the several years preceding September of 2007, the racial composition of the school board was four white members and three black members. The school superintendent, Wayne Thompson, was white. Sharon Sanders is white. There was evidence that during the several years during which the racial composition of the school board was four whites and three blacks, the school board often approved or disapproved motions by votes of four to three, with the division falling along racial lines. One of the issues about which the board divided along racial lines related to how to handle a teacher strike that occurred in early 2007. That teacher strike was resolved after the school board made a commitment to make a good faith effort to raise the teacher salaries for the ensuing school year.

In September of 2007, Milton Hall, who is black, was elected to succeed a white school board member, which changed the racial composition of the school board to four blacks and three whites. At the September 2007 school board meeting, the board voted for new officers. Elizabeth Johnson,

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

who is black, was elected president of the board. Hall was elected vice president. Johnson and Hall prevailed over two white board members by votes of four to three, with the board divided along racial lines.

Near the end of the regular board meeting in November of 2007, Hall made a motion, which was seconded by Johnson, to reassign Thompson from superintendent of schools to assistant superintendent of maintenance and transportation with his current pay, effective immediately. The four black school board members—Collins, Perry, Hall, and Johnson—voted for the motion. The two white school board members who were present[2] voted against the motion. Hall then made a motion, which was seconded by Johnson, to reassign Sanders to "Food Service Assistant, with current pay, immediately." The vote again was four to two, divided along racial lines. Thereafter, Hall made a motion, seconded by Johnson, to appoint Clyde Noel as interim superintendent. The vote was again four to two, divided along racial lines. Noel, a physical education teacher, is black. The position of finance coordinator was left vacant for several months.

Although the school board divided along racial lines when making these decisions, that fact, standing alone, would not be sufficient evidence to prove that any of the members of the school board were motivated by race. That the board divided along racial lines, however, is not all of the evidence. There was also evidence from which a jury could reasonably conclude that the reasons given for the decision to reassign Sanders were pretextual.

At trial, the school board members who voted to reassign Sanders gave three reasons for their decision. First, they were dissatisfied with the way in which the strike had been handled. They believed that it was important to increase teacher pay and were not satisfied with the advice given

---

[2] One white school board member was absent.

that the school district did not have enough resources to increase teacher pay. Secondly, they were unhappy that early in 2007 Thompson had requested, and the board had agreed, that Sanders would be relieved of her duty of making monthly reports to the board. Third, members of the school board expressed dissatisfaction with the format of the financial reports, stating that they were difficult to understand, and stating that they did not get satisfactory answers from Sanders and Thompson as to what the financial information meant with respect to important issues faced by the school board.

Although the school board members expressed dissatisfaction with the way in which the strike had been handled, Sanders had no authority in making any decisions with respect to the strike. Her role was to provide information that the decisionmakers could then use in deciding how to handle the strike. The four individual defendants testified that they were told that the school district lacked sufficient resources to raise salaries but the explanations as to why were unclear. In response to concerns of the board, a special meeting was held on November 15, 2007. That meeting, according to the minutes, was an instructional and financial retreat. As a part of that retreat, Sanders gave a presentation using PowerPoint, in which she went through the typical financial packet to explain to the board how to read the packet. Sanders also testified that she never refused to provide any information requested by the board, and she never refused to answer any questions. Hence, the jury had evidence from which it could find that Sanders provided all the information that the board requested and never failed to answer any of the board's questions.

As to the other explanations of why Sanders was reassigned, the difficulty is twofold. First, the school board could have corrected the perceived problems with Sanders without reassigning her. Secondly, even after Sanders was reassigned, the school board took no action to rectify the purported problems.

The vote to relieve Sanders of the duty to present the financial report at the monthly board meetings was the result of an effort by Thompson to retain Sanders as an employee of the school district. In January of 2007 Sanders wrote a letter resigning effective March 1, 2007. She stated in the letter that she disliked going before the school board. At the school board meeting on February 20, 2007, Thompson recommended that in the future he present the finance and food service reports, rather than continuing the practice of having the finance coordinator present the finance report and the food service coordinator present the food service report.[3] The school board voted that Thompson could present the financial report instead of Sanders and the food service report instead of Lewellen. The four white board members voted for that recommendation, while the three black members voted against it. Thereafter, Sanders rescinded her resignation. Thus, the school board, not Sanders, made the decision that the finance coordinator would no longer be required to present the financial report to the board at the monthly meetings. When the composition of the school board changed in September of 2007, the school board could have voted to rescind its decision and required Sanders to present the financial reports to the board, rather than reassigning her. Likewise, although the four defendants testified that they were dissatisfied with the format for the financial reports, and although they say that they requested a summary that would be clearer and easier to understand, they never voted to direct Sanders to provide such a summary. Furthermore, there was evidence that Sanders was available at the meetings to answer questions, and she was available to meet with members of the school board privately to explain the financial reports. Only one of the four—Pearlethe Collins—took advantage of the opportunity to meet with Sanders

---

[3] The food service coordinator was Doris Lewellen, who is black. Lewellen testified that she had requested Thompson to recommend that she not be required to present a report to the board each month.

8

privately for assistance in understanding the financial reports. Collins testified that meeting with Sanders helped her understand the financial reports, though she still did not understand them fully. The fact that the board members did not take advantage of the opportunity to meet with Sanders for instruction in understanding the financial reports is further evidence from which the jury reasonably could conclude that the reasons for the reassignment were pretextual.

Moreover, after Sanders was reassigned, the school board took no action to rectify the problems that purportedly resulted in her reassignment. The board did not rescind the previous vote stating that the school superintendent would present the monthly financial report. Instead, the interim superintendent continued to present the financial report every month from December of 2007 through June of 2008, after which a new school superintendent—Saul Lusk—was hired. It appears from the minutes of the school board meetings that Lusk continued to make the presentations of the financial reports at least through October of 2008. Similarly, the school board did not direct that the format of the financial report be changed or that a summary be given to them. Instead, they continued to receive the same report in the same format without objection at least until the summer of 2008. The minutes of the school board meeting on August 19, 2008, state that Johnson said that the financial report was presented in a more readable format, but before that date there was no change in the format of the financial report.

The jury had evidence from which it could reasonably conclude that the reasons given for the reassignment of Sanders were pretextual. Without objection, the jury was instructed that it could find that Sanders's race was a motivating factor in the defendants' actions if it had been proven that the defendants' stated reasons for their actions were not the real reasons but were a pretext to hide racial discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48, 120

9

S. Ct. 2097, 2108-09, 147 L. Ed. 2d 105 (2000) (explaining that the trier of fact may in appropriate circumstances infer discrimination from the fact that the purported reasons for an employment decision are discredited).

The argument that the stated reasons for the reassignment were pretexts for discrimination might not prevail had the school board voted to direct Sanders to make the monthly presentations of the financial report and she refused to do so; or had the school board voted to require her to provide a summary or some other format for the financial report and she refused to do so. The school board had the authority but took neither of those actions. The argument also might not prevail if the school board had corrected the alleged deficiencies after Sanders was reassigned. For example, after Sanders had been reassigned, if the school board had directed that the persons who were performing the duties of the finance coordinator should give the monthly presentation, instead of the interim superintendent, and if the school board had voted to direct those persons to provide a summary or some other format that would be easier to understand, then the inference might not be available. The school board took neither of those actions.

The jury was entitled to consider all of this evidence and to conclude that the reasons given for Sanders's reassignment were a pretext for racial discrimination. That evidence, coupled with the other evidence recited above, is sufficient to support the jury's finding that the decision to reassign Sanders was motivated by race and that the defendants had failed to prove that they would have made the same decision but for Sanders' race.

**C.    CONSTRUCTIVE DISCHARGE**

As noted, the defendants did not discharge Sanders. They reassigned her. After being told of the board action, Sanders visited a physician, obtained a prescription for anti-depression

medication, and obtained a letter stating that she should be placed on sick leave. Thereafter, Sanders continued on sick leave or vacation leave until September 2, 2008, by which date she used all of her available leave. On September 2, 2008, she wrote a letter of resignation effective immediately. She contends that she was constructively discharged.

The Eighth Circuit has stated, "To prove a case of constructive discharge, a plaintiff must show (1) a reasonable person in his situation would find the working conditions intolerable, and (2) the employer intended to force him to quit." *Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 616 (8th Cir. 2007).

Here, the evidence is wholly insufficient on the first element. The evidence provides no basis for concluding that a reasonable person in Sanders's situation would have found the working conditions at the Lee County School District intolerable. She testified that while she was finance coordinator she enjoyed her work, except for having to report to the board at the monthly meetings. There is no evidence that the new position would have required her to report to the board. As noted, the monthly food service report was presented to the board by the food service coordinator until February of 2007 and thereafter by the superintendent. In her new position, Sanders would have been working under the supervision of a long-time employee of the school district, Doris Lewellen, who was the food service coordinator. There was no evidence that Lewellen was difficult to work for or had any personal animosity toward Sanders. Sanders complained that even several months later she did not have a job description, but the new superintendent, Saul Lusk, wrote to her on August 20, 2008, before she resigned, saying:

> I am in receipt of your doctor's statement releasing you to return to work on September 2, 2008. I presented this information to our board in executive session at the board meeting on August 19, 2008.

11

> When I sent you the letter recommending that your employment with the school district be terminated, I had not received the statement of release from your doctor. The district has prepared a contract for you, and I will do my best to send you a job description for the position that you have been assigned to, by the end of this week.
>
> Please know that it is not my intention to become your enemy. I do not wish to cause you any further ill will. I feel that as Superintendent, it is my job to do what is in the best interest of the school district. Please call the office if you have further questions. I look forward to hearing from you or seeing you very soon.

Sanders never responded to the letter. She did not call to ask questions nor make an appointment to discuss with Lusk what her job description might be. Sanders continued to receive her full salary and benefits from November 26, 2007, when the first took sick leave, until September 2, 2008, when she resigned. She did no work whatsoever during that time, yet the defendants continued her employment with full pay and notified her that she had a contract waiting for employment when she was released to return to work. There is simply no evidence that would justify a reasonable person in concluding that Sanders's employment situation at the Lee County School District was intolerable. Sanders may have been unhappy about being demoted, and justifiably so, but the threshold issue is whether a reasonable person would have found the working conditions intolerable. "The intolerability of working conditions is judged by an objective standard, not the employee's subjective feelings; the question is whether working conditions were rendered so objectionable that a reasonable person would have deemed resignation the only plausible alternative." *Tatom v. Georgia-Pacific Corp.*, 228 F.3d 926, 932 (8th Cir. 2000). Sanders presented no proof to meet that standard. She was not constructively discharged.

As noted, Sanders continued on sick leave and personal leave through September 2, 2008. She received full pay with full benefits during that period of time. She resigned effective September 2, 2008. Her claim for lost wages and benefits resulted from a period of unemployment

following September 2, 2008, and the fact that when she obtained employment it was at a lesser salary. Because it is necessary to set aside the jury's finding that Sanders was constructively discharged, the verdict for lost wages and benefits must be vacated.

**D.     OTHER DAMAGES**

As noted, the jury awarded $10,000 for Sanders's emotional distress and mental anguish. The defendants argue that the award for emotional distress and mental anguish must be set aside because Sanders did not prove the elements of the tort of outrage. That argument is irrelevant because Sanders did not make a claim for the tort of outrage, the jury was not instructed on the tort of outrage, and the emotional distress damages were not awarded based on the tort of outrage.

In an employment discrimination case, damages may be awarded for emotional distress if the claim for damages is supported by competent evidence of "genuine injury." *Forshee v. Waterloo Indus., Inc.*, 178 F.3d 527, 531 (8th Cir. 1999) (quoting *Carey v. Piphus*, 435 U.S. 247, 264 n.20, 98 S. Ct. 1042, 1052 n.20, 55 L. Ed. 2d 252 (1978). A plaintiff's testimony can be sufficient for a finding of emotional distress; medical evidence is not necessary. *Christensen v. Titan Distribution, Inc.*, 481 F.3d 1085, 1097 (8th Cir. 2007). The plaintiff's testimony must provide specific facts as to the nature of the claimed emotional distress and the causal connection to the discriminatory action. *Id*. Awards for pain and suffering are highly subjective, and the assessment of damages for pain and suffering is within the sound discretion of the jury. *Id*.

Here, Sanders testified that she did not return to work on the Monday after she received word of her reassignment:

> Because I was devastated by what they had done. My first thought was just take a few days and it will all settle down. I was up that night, the next night, the rest of that week and that weekend. I did not get any sleep. I went to the doctor the next

    day, and after not sleeping that one night, and all I could do was cry. I was just absolutely devastated.

Medical records from Sanders's medical doctor were introduced into evidence. The records show that Sanders saw the doctor on November 21, 2007,[4] and reported anxiety and depression, for which the doctor prescribed medication. Sanders continued to see the doctor for depression and anxiety for the next several months. Sanders's medical doctor issued a letter stating that she should be placed on sick leave. He did not release her to return to work until September 2, 2008. Although the fact that Sanders's release to work coincided exactly with the expiration of all of her available leave time creates some suspicion about the extent and nature of her illness, the jury saw and heard her testimony and evaluated it. The jury concluded, obviously, that Sanders really did suffer some emotional distress, but the small amount of damages awarded suggests that the jury viewed the extent of the emotional distress with a critical eye.

    The evidence was sufficient to support a finding by the jury that Sanders suffered genuine injury. The size of the award suggests that the jury did not overestimate the extent of emotional distress suffered by Sanders. The motion to set aside the award of damages for emotional distress is denied.

**E.    PUNITIVE DAMAGES**

    The jury awarded punitive damages against three of the four individual defendants: Milton Hall in the amount of $2,500; Elizabeth Johnson in the amount of $5,000; and Victory Perry in the amount of $500. The jury awarded no punitive damages against Pearlethe Collins.

---

[4] Sanders left the November 20, 2007, board meeting before the vote to reassign her, but she testified that two persons called her that night to tell her of the action by the board. She went to the doctor the next day.

The Eighth Circuit has explained:

> Punitive damages are appropriate for victims of Title VII if the plaintiff has shown that the employer engaged in intentional discrimination and acted with malice or with reckless indifference to the plaintiff's federally protected rights. Malice and reckless indifference can be shown by demonstrating that an employer discriminated in the face of a perceived risk that its actions will violate federal law. This standard refers to the employer's state of mind regarding its knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination.

*Dominic v. Devilbiss Air Power Co.*, 493 F.3d 968, 974 (8th Cir. 2007) (citations and internal quotation marks omitted). The same standard is applied in cases arising under 42 U.S.C. § 1983. *Swipies v. Kofka*, 419 F.3d 709, 718 (8th Cir. 2005).

At trial, Sanders presented no evidence and made no argument that the defendants acted in the face of a perceived risk that they were violating federal law. Testimony was elicited to the effect that the four board members who voted to reassign her never checked with the policies of the school district to see whether they were acting in accordance with those policies or violating rights that Sanders had under those policies. No questions were asked, however, and no argument was made that the defendants acted in disregard of a perceived risk of violating federal law. *Cf. id.* (evidence that the defendant knew he was violating state law was inadequate to support punitive damages). The only evidence on that issue was testimony from the defendants that they did not intend to harm Sanders because they continued her salary at the same rate. There was some evidence that Elizabeth Johnson exhibited personal animosity toward Sanders when she was reporting directly to the board, but there was no evidence that Johnson or other board members voted to reassign Sanders in the face of a perceived risk that the reassignment would violate federal law. Consequently, the punitive damages award must be set aside.

## CONCLUSION

For the reasons stated above, the motion for judgment as a matter of law is granted in part and denied in part. The motion for judgment as a matter of law is denied with respect to the jury's finding that Sanders suffered an adverse employment action motivated by race resulting in damages for emotional distress. The motion for judgment as a matter of law is granted with respect to the jury's finding that Sanders was constructively discharged and on the verdict for punitive damages. The award of damages for lost wages and benefits depended on the finding of constructive discharge. Because the finding of constructive discharge is set aside, the damage award for lost wages and benefits must be vacated. With the verdicts for constructive discharge and punitive damages set aside, the remaining verdicts are not contrary to the weight of the evidence. A new trial is not warranted to avoid a miscarriage of justice. Therefore, the motion for new trial is denied. An amended judgment will be entered accordingly.

IT IS SO ORDERED this 10th day of September, 2010.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE